

# AGREEMENT FOR
# CONFIDENTIAL INFORMATION
# AND INTELLECTUAL PROPERTY

This Agreement for Confidential Information and Intellectual Property ("Agreement") is entered into this day of __7/13/2018__ ("Effective Date"), between Tokyo Electron America, Inc., with its principal place of business at 2400 Grove Boulevard, Austin, TX 78741 U.S.A. ("TEA") and __ANDREW Dale MILLER__, an employee of TEA residing at __1110 NW 10th Street    Battle Ground    Washington  98604__ ("Employee"). TEA and Employee are also hereafter referred to individually as a "Party" and collectively as the "Parties".

In consideration of the mutual covenants contained herein, the Parties hereto agree as follows:

1. DEFINITIONS.

    (a) "Affiliate" means with respect to any Person, any Person that, directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such Person.

    (b) "Business" means the business of Company as conducted on the Effective Date hereof and at any time hereafter, including without limitation, the development, manufacture, marketing, distribution, license or sale of the Products and all Services.

    (c) "Company" means TEA, its subsidiaries, its parent company Tokyo Electron U.S. Holdings, Inc., Tokyo Electron Limited, and any other companies in which Tokyo Electron Limited now or hereafter owns more than twenty percent (20%) of the outstanding shares of common stock.

    (d) "Company Information" means all information, tangible or intangible, which is secret, confidential or proprietary in nature and which concerns business or affairs of Company, its customers or suppliers, including, but not limited to, inventions, trade secrets, ideas, programs, works of authorship, know-how, technical and business information, marketing and financial information, data, products, processes, developments, improvements, techniques, and plans.

(e) "Employment" means the employment of Employee with TEA or any Affiliate of TEA.

(f) "Person" means an individual, partnership, corporation, limited liability company, business trust, joint stock company, estate, trust, unincorporated association, joint venture, or other entity, of whatever nature.

(g) "Products" means the current or former products of TEA or any Affiliate of TEA, including but not limited to those products on any current or former price lists of TEA or any Affiliate of TEA, and any and all source and object codes, binaries, supplements, modifications, updates, corrections and enhancements to past and present versions of such products and versions of such products under development, and any and all English and foreign language versions of past and present versions of such products and versions of such products under development.

(h) "Restrictive Period" means the time period commencing on the Effective Date hereof and continuing during the Employment and for a period of two (2) years following the date that the Employment terminates for any reason.

(i) "Services" means all services related to the Products developed, marketed, provided or sold by or on behalf of TEA or any Affiliate of TEA, including, without limitation, development, implementation, support and maintenance services and processing services using the Products.

(j) "Territory" means (1) any city, county or other political subdivision or part thereof of the State of Texas, and (2) any city, county or other political subdivision of any other state or part thereof in the United States and of any country or other territory in the world or part thereof, where TEA or any Affiliate of TEA:  (x) is selling, marketing or delivering any of the Products or Services or is otherwise carrying on business or selling or marketing activities related to such Products or Services as of the date that the Employment terminates, or (y) has engaged in any of the activities described in part (x) above within the twelve (12) month period preceding the termination of the Employment.

2. CONFIDENTIALITY.

(a) Employee hereby acknowledges and agrees that the Company Information is the proprietary right and trade secret of Company. During the Employment and thereafter, Employee shall treat the Company Information as confidential. Employee shall not disclose the Company Information, directly or indirectly, to any person, firm, corporation or other third party, except strictly in connection with the services that Employee

provides to the Company. The foregoing confidential obligation of Employee shall not be applicable to the Company Information that is, or hereafter will become, generally available to the public through no fault of Employee. Employee also agrees to treat all U.S. Government classified information and other foreign country material in the manner specified by applicable government regulations.

(b) Employee recognizes that Company has and will receive information from third parties which is proprietary information subject to a duty on Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes and in accordance with any agreement entered into by the Company. Employee agrees that, during the term of the Employment and thereafter, Employee owes a duty to Company and the third party to hold all proprietary information received from a third party in the strictest confidence and not to disclose it, except as necessary in carrying out Employee's work for Company and not to use it for the benefit of anyone other than Company or such third party consistent with Company's agreement with such third party.

3. COMPANY PROPERTY.

Employee agrees that all Company property, including but not limited to Company Information, documents, data, records, apparatus, equipment, computer memories and other tangible items, including any copies thereof, containing the Company Information, which shall come into Employee's custody, or possession in connection with Employee providing services to the company (the "Company Property") shall be, are and remain the exclusive property of Company. Employee shall use the Company Property only in the performance of Employee's duties to the Company and shall deliver the Company Property to Company and not take any reproduction of the Company Property upon termination of the Employment.

4. INTELLECTUAL PROPERTY CREATED BY EMPLOYEE.

(a) Employee agrees to make prompt full written disclosure to Company, or any persons or entity designated by Company, of all ideas, improvements, inventions, programs, formulae, processes, techniques, discoveries, developments, designs, trade secrets, know-how, data, works of authorship, concepts, whether or not patentable or registrable under patent, copyright or similar laws, and all designs, trademarks, and copyrightable works that Employee may solely or jointly make or conceive or reduce to practice or learn during the period of the Employment which (i) are within the scope of the services provided by Employee to the Company and are related to or useful in the business of Company or to Company's actual or demonstrably anticipated research, design, development, experimental, production, financing, manufacturing,

licensing, distribution or marketing activity carried on by the Company, or (ii) result from tasks assigned to Employee by the Company, or (iii) are funded by Company, in whole or in part, or (iv) result from use of premises owned, leased or contracted for by the Company (collectively, the "Inventions"). Such disclosure shall continue after termination of the Employment.

(b) Employee agrees that all Inventions shall be the sole property of Company and its assigns, and Company and its assigns shall be the sole owner of all patents, trademarks, copyrights and other rights in connection therewith. Employee hereby assigns to Company all the right, title and interest in and to any and all rights Employee may have or acquire in all Inventions. In addition, to the extent permitted by federal law, Employee agrees that all works of authorship made solely by Employee or jointly with others within the scope of and during the period of the Employment and which are protectable by copyright are "works made for hire", as that term is defined in the United States Copyright Act, shall be "Inventions" and Employee hereby assigns all such works made for hire to Company or its designee.

(c) Employee represents that all inventions, discoveries, developments, trade secrets or other intellectual property made or conceived or first reduced to practice by Employee (alone or jointly with others) prior to the Employment are set forth on Exhibit A and shall not be required to be assigned to Company. If no such list is attached, Employee represents that he or she has created no inventions, discoveries, developments, trade secrets or other intellectual property at the time of the signing of this Agreement that are to be removed from the operation of this Agreement. Employee agrees that Company is free to complete or develop intellectual property within the areas and types of products described in Exhibit A. This Agreement also does not require the assignment of any invention, which qualifies fully for protection under Section 2870 of the California Labor Code ("Section 2870"), attached as Exhibit B.

(d) Employee agrees to assist the Company, or its designee, at the Company's expense, in every proper way to secure the Company's rights in the Inventions and any copyrights, patents, mask work rights or other intellectual property rights relating thereto in any and all countries, including the disclosure to the Company of all pertinent information and data with respect thereto, the prompt execution of all applications, specifications, oaths, assignments and all other instruments which the Company shall deem necessary in order to apply for and obtain such rights and in order to assign and convey to the Company, its successors, assigns, and nominees the sole and exclusive rights, title and interest in and to such Inventions, and any copyrights, patents, mask work rights or other intellectual property rights relating thereto. Employee further agrees

Vreeland Decl., Exhibit 1
Page 4 of 11

to promptly execute or cause to be executed any such instrument or papers after the termination of the Employment. If the Company is unable because of Employee's mental or physical incapacity or for any other reason to secure Employee's signature to apply for or to pursue any application of any United States or foreign patents or copyright registrations covering Inventions or original works of authorship assigned to the Company as above, Employee hereby irrevocably designates and appoints the Company and its duly authorized officers and agents as Employee's agent and attorney-in-fact, to act for and in Employee's behalf and stead to execute and file any such applications and to do all other lawfully permitted acts to further the prosecution and issuance of patents, trademarks, copyrights or similar protections thereon with the same legal force and effect as if executed by Employee. Company shall also have the right to keep any and all Inventions as trade secrets.

5. INFORMATION OF OTHER COMPANY.

(a) Employee agrees not to disclose to Company any confidential information of any previous employer with which Employee has worked before the Employment. Employee shall not use any confidential information of any previous employer in the performance of Employee's work for Company. Employee agrees to immediately notify Company if circumstances should arise which would cause Employee to use any confidential information of any previous employer in the performance of Employee's work for Company.

(b) Employee represents that Employee's performance as an employee of TEA does not and will not breach any agreement or obligation relating to any employer of Employee prior to the Employment. Employee agrees and acknowledges that Employee has not entered into, and Employee will not enter into, any agreement either written or oral in conflict with the Employment.

(c) Employee further represents that Employee is not bound by any agreement which would impede the Employment, either in the form of non-compete agreements, confidentiality agreements, or like agreements with prior employers, joint venturers or others. Employee represents that Employee is not in possession of any materials from prior employers, joint venturers or others with whom Employee has dealt which could reasonably be considered trade secretive or proprietary, or alternatively, that if Employee is in possession of such materials, Employee will maintain their confidential nature and will disclose neither their substance nor detail to any Company employee, officer, representative or agent. In the event any prior employer, joint venturer or other business associate of Employee makes any claim that Employee has failed to comply with a non-compete, confidentiality or other agreement by virtue of the Employment, Employee will notify the Company immediately upon

learning of such claim, providing such information about the claim or demand as Employee may have.

6. RECORDS.

Employee agrees to make records of the detail of Employee's daily work at or for Company in authorized Inventor's Notebooks supplied and kept by Company. Inventor's Notebooks shall be the property of the Company and their contents shall be considered Company Information. The employees of the Company and others authorized by Company will be given access to Inventor's Notebooks when necessary.

7. EMPLOYEE IP APPLICATION FILINGS.

If, during the Restrictive Period, an application for an intellectual property right is filed by or for Employee anywhere in the world and the subject matter thereof is related to present or prospective activities of Company, or of any supplier or customer of Company, the subject matter covered by the application shall be presumed to have been conceived during the Employment.

8. NON-SOLICITATION.

(a) During the Restrictive Period, Employee shall not, directly or indirectly, on Employee's own behalf or on behalf of any third party, (i) solicit or attempt to solicit any person who is an employee of the Company or any Affiliate immediately after termination of the Employment to cease his/her relationship with the Company or such Affiliate, or to become an employee, independent contractor or consultant or otherwise to provide services to any person or entity other than the Company or any Affiliate, (ii) solicit or attempt to solicit any person who is an independent contractor or consultant of the Company or any Affiliate immediately after termination of the Employment to cease his/her relationship with the Company or such Affiliate, or to become an employee, independent contractor, or consultant or otherwise to provide services to any person or entity other than the Company or any Affiliate, or (iii) hire or employ any person who is an employee, independent contractor or consultant of the Company or any Affiliate immediately after termination of the Employment.

(b) During the Restrictive Period, Employee shall not, directly or indirectly, on Employee's own behalf or on behalf of any third party, solicit or call upon any person or entity that has purchased any Products or Services or the same or similar products or services developed, marketed, provided or sold by or on behalf of the Company or any Affiliate at any point prior to the Effective Date hereof or at any time during the Employment (or any prospective purchaser of any Products or Services or the same or similar

products or services developed, marketed, provided or sold by or on behalf of the Company or any Affiliate) for the purpose of soliciting or selling products or services in competition with the Business within the Territory. During the Restrictive Period, Employee shall not induce any customer or prospective customer of the Company or any Affiliate that was a customer or prospective customer at or prior to the Effective Date hereof or at any time during the Employment, to cease doing business in whole or in part with any of the Company or any Affiliate in connection with the Business.

9. EQUITABLE RELIEF.

Employee acknowledges that any breach or threatened breach by Employee of this Agreement will result in immediate and irreparable harm to the Company, for which there will be no adequate remedy at law, and that Company will be entitled to equitable relief to restrain Employee from violating the terms of this Agreement, or to compel Employee to cease and desist all unauthorized use and disclosure of Company Information, without posting bond or other security. Company shall be entitled to recover from Employee any costs or expenses incurred in obtaining relief against breach of this Agreement by Employee, including but not limited to, legal fees and costs. Nothing in this Section 9 shall be construed as prohibiting the Company from pursuing any other remedies available to it for such breach or threatened breach, including recovery of damages from Employee.

10. MISCELLANEOUS.

(a) Assignment. This Agreement is not assignable or transferable by Employee, in whole or in part, except with the written consent of the Company.

(b) Notices. Any notices provided for under this Agreement shall be deemed effective when delivered in person or three (3) days after deposit in the mails by registered or certified first class mail postage prepaid and addressed to the respective address listed in the introduction of this Agreement, or to such different address as either Party may designate in writing to the other Party.

(c) Disclaimer of Agency. This Agreement shall not entitle Employee to act as the legal representative or agent of the Company, nor shall Employee have the right or authority to assume, create or incur any liability or any obligation of any kind, expressed or implied, against or in the name of or on behalf of the Company.

(d) Modifications. No modification or amendment of this Agreement or any associated agreement, and no waiver of any of the terms or conditions hereof or thereof, shall be valid or binding unless made in writing duly executed by both Parties.

(e) Enforceability. In the event that a court of competent jurisdiction finds that any term or portion of this Agreement is not reasonable and imposes a greater restraint than is necessary to protect the intellectual property, goodwill or other business interest of the Company, the Employee agrees that the court may reform the agreement such that it is valid and enforceable. In the event that a court of competent jurisdiction determines that any other portion of this Agreement is in violation of any statute or public policy, then only the portions of this Agreement which violate such statute or public policy shall be stricken. All portions of this Agreement which do not violate any statute or public policy shall continue in full force and effect. Further, any court order striking any portion of this Agreement shall modify the stricken terms as narrowly as possible to give as much effect as possible to the intentions of the Parties under this Agreement.

(f) Governing Law. This Agreement shall be governed and construed in accordance with the laws of the State of Texas, without regard to any applicable conflicts of law provisions thereof that may require the application of the laws of another jurisdiction (except to the extent that mandatory provisions of federal law are applicable).

(g) Drafter of Agreement. Notwithstanding the fact that this Agreement has been drafted or prepared by one of the Parties, each of the Parties confirms that each of them and their respective counsel have reviewed, negotiated and adopted this Agreement as the joint agreement and understanding of the Parties, and the language used in this Agreement shall be deemed to be the language chosen by the Parties hereto to express their mutual intent, and no rule of strict construction shall be applied against any person.

(h) Full Understanding. Employee represents that Employee has carefully read and fully understands all of the provisions of this Agreement, that Employee is competent to execute this Agreement, and that Employee has entered into this Agreement freely and voluntarily and not under duress.

(i) Force Majeure. Neither Party to this Agreement shall be liable for its failure to perform hereunder due to circumstances beyond its reasonable control, including but not limited to strike, riot, war, terrorism, fire, act of God, accident, plant breakdown not caused by the fault or neglect of such Party, nor failure of such Party to comply with any law, regulation or order,

whether valid or invalid, of the United States of America or any other governmental body.

(j) Counterparts; Entire Agreement. This Agreement may be executed in two or more counterparts and by facsimile, each of which shall be deemed an original, but which together shall constitute one and the same instrument. This Agreement constitutes the entire agreement of the Parties regarding its subject matter, and supersedes any previous and/or contemporaneous agreements, whether oral or written. No modification to this Agreement shall be binding on a Party unless such modification is in writing and is signed by the Party's authorized representative. In the event of any conflicting provisions between this Agreement and the attached exhibit(s), the language of this Agreement shall supercede the terms and conditions of the exhibit(s).

This Agreement should not be deemed or construed to be an employment contract, either expressed or implied, between TEA and Employee. It is understood that employment at TEA is "at will." This means either Employee or TEA may terminate the employment relationship for any reason at any time "other than for a reason expressly prohibited by law."

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the Effective Date first above set forth.

TOKYO ELECTRON AMERICA, INC.     EMPLOYEE

By: _____      Sign: _____

Name: Vickie D. Lee              Name: ANDREW    Dale    MILLER

Title: V.P. Human Resources

Date: 7-23-18                    Date: 7/13/2018

## EXHIBIT A:

## LIST OF INTELLECTUAL PROPERTY

The following is a complete list of all inventions, discoveries, developments, trade secrets or other intellectual property made or conceived or first reduced to practice by Employee alone or jointly with others prior to the Employment with TEA. Employee desires to remove the following from the operation of the Agreement.

[✓] No such inventions, discoveries, developments, trade secrets or other intellectual property.

[ ] Inventions, discoveries, developments, trade secrets or other intellectual property are listed below.

EXHIBIT B:

SECTION 2870 OF THE CALIFORNIA LABOR CODE

2870. (a) Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

(1) Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or
(2) Result from any work performed by the employee for the employer.

(b) To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable.